**UNITED STATES of America,**
**Appellee,**

v.

**Christian T. VIERTEL, Defendant–**
**Appellant.**

No. 03–1364.

United States Court of Appeals,
Second Circuit.

May 28, 2004.

Kim P. Bonstrom, Bonstrom & Murphy, New York, NY, for Appellant.

Marcia S. Cohen, Assistant United States Attorney, New York, NY, for Appellee.

Present: MINER, POOLER, and KATZMANN, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

Christian Viertel appeals from a judgment, rendered on a jury verdict, that convicted him of conspiracy to commit wire fraud and mail fraud and one count each of wire fraud and mail fraud. Viertel and his friend, Fritz Blumenberg, conspired to defraud Burda Media and Burda Media's parent corporation through a scheme in which Blumenberg submitted fraudulent invoices or other claims to Burda Media for services allegedly but not actually performed by sham companies whose bank accounts Viertel controlled.

We assume the parties' familiarity with the facts, procedural background, and specification of appellate issues and affirm the judgment for the reasons that follow.

■ (1) Because Viertel did not object to the Assistant United States Attorney's ("AUSA") discussion of the charged mailing and wire transfer during summation, we can review his current claim that the discussion misled the jury only for plain error. Fed.R.Crim.P. 52(b). In order to obtain reversal based on plain error, a defendant must demonstrate that the error prejudiced his substantial rights and affected the outcome of the proceedings. *United States v. Thomas,* 274 F.3d 655, 668 (2d Cir.2001) (en banc). In light of the trial court's clear and accurate instructions on these counts and its further instruction that the jury should disregard any legal principle discussed in argument that conflicted with the court's instruction, Viertel cannot demonstrate that the outcome of his trial was affected by the AUSA's remarks.

■ (2) Because Viertel and Blumenberg engaged in a continuing scheme in which they repeatedly submitted fraudulent invoices to and received payment from Burda Media, Viertel's contention that their scheme came to fruition when it was detected or when they received their last payment, lacks merit. *See Schmuck v. United States,* 489 U.S. 705, 711–12, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (holding that defendant who set back odometers on used cars and then sold them to dealers—victimizing the same dealers repeatedly—engaged in a scheme that had not reached fruition until the dealers sent the titles to the state department of transportation because the dealers' failure to successfully convey title would have ended the scheme). Here had Burda Holding ceased replenishing Burda Media's account, that would have ended Viertel and Blumenberg's

scheme. And, like the used car dealer in *Schmuck,* the victims here would have ceased to trust Blumenberg if he stopped supplying invoices. Therefore, the scheme had not come to fruition when the charged mailing and wiring occurred.

(3) Notwithstanding their victims' detection of Viertel's and Blumenberg's scheme before the charged wire transfer and mailing, these communications furthered the execution of the scheme to the extent necessary under the wire and mail fraud statutes. *See* 18 U.S.C. §§ 1341, 1343; *see also Schmuck,* 489 U.S. at 715 ("The relevant question at all times is whether the mailing is part of the execution of the scheme *as conceived by the perpetrator at the time,* regardless of whether the mailing later, through hindsight, may prove to have been counterproductive and return to haunt the perpetrator of the fraud.") (emphasis added). The jury could reasonably have found that the charged wire transfer and mailing were part of the defendant's scheme.

■ (4) The overt acts—submitting a fraudulent invoice and a written request for payment—charged under the conspiracy statute, 18 U.S.C. § 371, were neither legally nor factually insufficient. Even if Viertel had already been paid and his fraud had been detected when he submitted the fraudulent invoice, "a conspiracy continues until its aim has been achieved, it has been abandoned, or otherwise terminated." *United States v. Salmonese,* 352 F.3d 608, 615 (2d Cir.2003) (internal quotation marks omitted). In addition, detection of a conspiracy does not necessarily end it. *United States v. Jimenez Recio,* 537 U.S. 270, 275, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003). Therefore, the jury could reasonably have found that Viertel and Blumenberg intended to continue to defraud Burda Media and Burda Holdings and that the invoice was an overt act in furtherance of their continuing conspiracy.

*United States v. Ben Zvi,* 242 F.3d 89 (2d Cir.2001), on which Viertel relies to argue that his co-conspirator's request for a check from a Burda Media employee was not an overt act in furtherance of the conspiracy, is inapposite. Unlike the defendant in *Ben Zvi,* Blumenberg committed an "identifiable act" by requesting the check. *See id.* at 97.

Finally, contrary to Viertel's contention, there was ample evidence to support the jury's conclusion that the charged acts were part of the conspiracy between Viertel and Blumenberg. Among other things, Viertel endorsed the check resulting from Blumenberg's request for payment and the check was deposited in an account Viertel controlled.

(5) Despite objecting to the court's submission of certain documents to the jury, Viertel now argues that the court's failure to submit them was reversible error. We conclude that Viertel waived this claim. *United States v. Yu–Leung,* 51 F.3d 1116, 1122–23 (2d Cir.1995).

(6) We have considered and rejected Viertel's remaining arguments.

We therefore affirm.